IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **EVELYN STANLEY, et al.,** | | |
| | **Plaintiffs,** | |
| **v.** | | **1:05-cv-2057-WSD** |
| **LUKE STREADY, JR., et al.,** | | |
| | **Defendants.** | |

## OPINION AND ORDER

This is a dispute arising out of the administration of the estate of the decedent, Beatrice Stready.  Plaintiffs contend the state probate court and all participants in that proceeding ignored the decedent's will, resulting in the allegedly wrongful sale of the estate's primary asset, a 27-acre tract of land.

I.    **BACKGROUND**[1]

Plaintiff Evelyn Stanley[2] is an heir to the estate of the decedent, Beatrice Stready (the "decedent").  (Compl. at 2.)  Defendant Luke Stready, Jr., was appointed the executor of decedent's estate in the Gwinnett County Georgia Probate Court.  (Id. at 7.)  Defendant Harrison was a Georgia attorney who represented Defendant Stready, as the estate executor, in proceedings before the probate court.  On December 19, 2002, Plaintiff Stanley and her aunt, Louise Kelly, retained Defendant Skinner, an attorney, to assist them in the Probate Court proceedings.

In December 2002, the decedent's estate consisted of approximately 36.7 acres of land.  (Id. at 7.)  On February 27, 2004, Defendant Stready filed in the Probate Court, a "Petition of Personal Representative for Leave to Sell Property,"

---

[1] The Court has examined all of Plaintiffs' filings, and the following statement of facts reflects those facts alleged in Plaintiffs' Complaint [1] ("Compl."), entitled "Plaintiffs' Motion for Summary Judgment," and those facts which are undisputed.

[2] Plaintiff Evelyn Stanley purports to represent herself, the "heirs of the Beatrice Stready Estate," and the "Beatrice Stready Estate except Luke Stready Jr." Because Ms. Stanley refers to "Plaintiffs" throughout her filings, the Court will refer in this Order to "Plaintiffs," but notes in light of the Court's disposition of this action it is not necessary to determine if the "heirs" or the "estate" are proper parties to this action.

relating to a 27-acre portion of the estate.[3]  (Ex. 1 to Def. Clarke's Answer [9].)

The heirs to the estate, including Plaintiff Stanley, executed an "Acknowledgment

of Service and Consent to Petition."  (See Ex. 2 to Def. Clarke's Answer.)

On March 3, 2004, Probate Court Judge Walter J. Clarke ("Defendant Judge

Clarke") entered an order granting Defendant Stready's petition.  (Ex. 3 to Def.

Clarke's Answer.)  The property was then sold for $1,000,000, and a partial

distribution of the proceeds was made to the heirs.  (Id.; Compl. at 12.)[4]

On August 13, 2004, Plaintiff Stanley filed a petition in the probate court

entitled "Breach of Fiduciary Duty."  (Ex. 4 to Def. Clarke's Answer.)  Plaintiff

Stanley complained that the heirs had not received full payment from the sale, and

she asked the probate court to conduct an investigation into the administration of

the estate.  Defendant Judge Clarke ordered an accounting and instructed

Defendant Stready to account for the assets and disbursements paid out of the

estate.

---

[3]  The focus of this action is the 27-acre portion of the estate.  There does not appear to be a dispute before the Court regarding the remaining 9.7 acres of property.

[4]  A portion of the sale proceeds were withheld by the executor from the distribution until the estate's tax liability was resolved.

Defendant Judge Clarke conducted a hearing on Plaintiff Stanley's petition. At the hearing it was determined that the heirs had received a partial distribution and that final distribution of the assets of the estate would be made pending a determination of the estate's tax liability.  After distributing the remaining property to the heirs, Defendant Stready filed a verified "Petition for Discharge," the heirs were served with this petition, and the Probate Court issued a final order discharging Defendant Stready from his duties as executor.  (See Exs. 7-9 to Def. Clarke's Answer.)

The Court has reviewed all of Plaintiffs' pleadings[5] to determine the causes of action asserted against Defendants and grounds for them[6], relying primarily on

_____

[5]  Plaintiffs' complaint is entitled "Plaintiffs' Motion for Summary Judgment" [1].  Plaintiffs also filed with the Court a Motion for Summary Judgment [15], Motion to Stay [21], Motion to Object to Defendants' Counsel's Behavior [36], Motion to Amend [54], Motion for Court Order [66], Motion for Leave to Give Notice and Motion for Court Order to Show Cause [67], Motion for Leave to Amend and to Petition the Court for a Preliminary Injunction [68], Motion to Hear and Consider Plaintiffs' Motion [69] and various other briefs [32, 35, 38, 39, 40, 49, 52, 53, 56, 57, 58, 59, 60, 62, 64].

[6]  The Court tried carefully to discern the claims from a difficult set of submissions from Plaintiffs.  (See, e.g., Pls.' Memo. of Law in Opp'n to Def. Clarke's Mot. for Summ. J. [39] at 6 ("So then, the judge (master) is responsible for the colors of the flag, and gives notice to all who enters the courtroom (foreign port/bar) that the Constitutions will not apply . . . ."); Pls.' Memo. of Law in Opp'n to Def. Harrison's Mot. for Summ. J. [56] at 6 ("Plaintiffs are expecting the Court

Plaintiffs' Complaint in this determination.[7]  Plaintiffs assert claims against

Defendants for violation of:  Plaintiffs' due process and equal protection rights; the

First, Sixth and Thirteenth Amendments; 42 U.S.C. §§ 1983, 1985 and 1986; and

Title II of the Civil Rights Act of 1964.  Plaintiffs also appear to assert numerous

claims under state law.

## II.    DISCUSSION

### A.    Jurisdiction

Federal courts are courts of limited jurisdiction, and thus a federal court must

take care to ensure that it has jurisdiction for all cases that come before it.  Rembert

v. Apfel, 213 F.3d 1331, 1333-34 (11th Cir. 2000).  To that end, a district court

must always answer the question of whether it has subject matter jurisdiction to

hear a case, even if no party raises the question of jurisdiction by motion.  Id.;

---

to exercise the appropriate constitutional jurisdiction in keeping the Law of the Flag
according to 4 USC, chapter 1, section 1 and not in accordance with Army
Regulations 48-10, chapter 2-5, section (a) & (b).").)  The Court has construed
Plaintiffs' claims liberally in view of Plaintiffs' *pro se* status.

[7]  Because of the large and escalating number of filings by the parties
involved in this litigation, which were directed to matters which likely would be
impacted by the Court's decision on the viability of Plaintiffs' claims, the Court
stayed this case pending the Court's rulings on the parties' pending motions.  (Dec.
7, 2005 Order [61].)

Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001) ("[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.").  In this case, there is an issue of jurisdiction which the Court must address before it may address the merits of their motion. Specifically, the Court finds Plaintiffs' claims implicate the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts.  Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000); Hall v. Martin, 191 F.R.D. 617, 622 (D. Kan. 2000) ("Generally, jurisdiction to review state-court decisions lies exclusively with appellate state courts and, ultimately, the United States Supreme Court.") (citing Facio v. Jones, 929 F.2d 541, 543 (10th Cir. 1991)).  "The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." Id. (internal citations omitted).

"A federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Id.; Crutchfield v. Countrywide Home Loans, 389 F.3d 1144, 1147 (10th Cir. 2004) (stating the doctrine "prohibits a party losing in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.") (quotations omitted). "The fact that [a] plaintiff alleges that the state court judgment was procured by fraud does not remove his claims from the ambit of *Rooker-Feldman*." Sharp v. Bivona, 304 F. Supp. 2d 357, 363 (E.D.N.Y. 2004) (holding that "even if the orders by the state court were wrongfully procured, as the plaintiff alleges, the orders remain in full force and effect until they are reversed or modified by an appropriate state court. Put simply, the plaintiff cannot enter through the back door to evade the *Rooker-Feldman* doctrine in order to get into federal court.") (quotations and internal citations omitted); see also Tindall v. Gibbons, 156 F. Supp. 2d 1292, 1299 (M.D. Fla. 2001) (dismissing *pro se* plaintiff's action for fraud in the procurement of the state-court decision for lack of subject matter jurisdiction under *Rooker-Feldman*). Likewise, a plaintiff's recasting of his request for review of the state-

court decision as a Section 1983 claim for deprivation of constitutional rights in the

state-court proceeding does not alter the application of the *Rooker-Feldman*

doctrine.  Rolleston v. Eldridge, 848 F.2d 163 (11th Cir. 1988) ("A section 1983

action is neither an alternative nor a complement to the appeal of a state trial court

decision to a higher state court."); Brown v. Sweeney, No. 00-2853, 2000 WL

1801613, *1 (8th Cir. Dec. 8, 2000) (affirming dismissal of *pro se* plaintiffs' §§

1983 and 1985 claims for lack of subject matter jurisdiction under *Rooker-Feldman*

where plaintiffs' alleged defendant state officials and state court judges "conspired

to deny them, as pro se litigants, equal protection and meaningful access to the

state courts . . ."); Williams v. Adkinson, 792 F. Supp. 755, 761-62 (M.D. Ala.

1992) (finding plaintiff's "federal lawsuit, although couched in terms of a civil rights

complaint, is essentially an effort to appeal the adverse determination of the state

court.  Such an appeal would be barred by the *Rooker-Feldman* doctrine, which

prohibits a federal district court from reviewing a final judgment of a state court for

alleged errors of federal law.").

     The Eleventh Circuit has established a four-part test for determining whether

the *Rooker-Feldman* doctrine applies:

> The *Rooker-Feldman* doctrine bars lower federal court jurisdiction where four criteria are met:  (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

Amos v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003) (internal citations omitted).  Where a plaintiff's claims are inextricably intertwined with a state court's judgment and otherwise satisfy the four criteria set out by the Eleventh Circuit, the federal court must dismiss these claims for lack of jurisdiction.  See Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1334 (11th Cir. 2001) (holding plaintiffs' claim that the state court's ex parte proceeding violated their due process rights "strike[s] at the heart of the state court's proceedings and judgment" and therefore was inextricably intertwined with the state court's judgment and barred by the *Rooker-Feldman* doctrine).

In this case, Plaintiffs allege Defendants violated their federal and state rights during the course of the Probate Court of Gwinnett County proceedings.  It is undisputed that Plaintiff Stanley participated in the probate court proceedings and

that Plaintiffs did not appeal any order issued by the probate court.[8]  Plaintiffs in

their Complaint recite a litany of actions stemming from the judicial proceedings,

which they argue were improper and which they allege resulted in a deprivation of

their federal and state rights.  The following examples are illustrative:

- "[Defendants] willingly created in concert a deceptive and flagrant judicial proceedings, and handlings of Beatrice Stready Estate while acting under color of statu[t]e, ordinance, regulation, custom, tradition, and laws of which has deprived, and are still confiscating Plaintiffs' substantive, and procedural due process rights, equal protection of the laws, or equal privileges . . . ."  (Compl. at 4.)

- " . . . fraudulent judicial proceedings hatched from the seductive, treacherous, and subversive handlings of the Beatrice Stready Estate . . . ."  (Compl. at 4.)

- "Judge Clarke II, Attorneys Harrison, and Skinners' conduct with the handling, and supervision of the B.S. Estate resulted in the abridgement, and disenfranchisement of plaintiffs' Constitutional and Civil Rights in which triggered violations of Title II of the Civil Rights Act of 1964 sections 201(a), (d), 202, and 203(a) as described/supported by the other ten Counts and allegations." (Compl. at 12.)

---

[8]  An underlying state-court judgement potentially can be challenged if a party was not afforded due process.  See Bass v. Hoagland, 172 F.2d 205, 210 (5th Cir. 1949) (noting failure to provide notice to defendant who had filed answer and was entitled to notice violated due process and subjected judgment to collateral attack). In this case, Plaintiffs' due process rights were not violated.  (See Section II.B.2.b, *infra*.)

- "The Plaintiffs allege[] Luke Stready, through defendants' agents engaged in conduct which was intentional and/or reckless using unethical, unlawful, English Common Law practices and misrepresentations regarding the prejudicial, judicial, and post judicial handling of the Beatrice Stready Estate."  (Compl. at 14.)

- "Plaintiffs' ambitions, desires, and expectations are to adhere to the last Will and testament of Beatrice Stready . . . .  This should have been enforced by all judicial officers involved subsequent, to reading the Will of Beatrice Stready, and there is no acceptable excuse the injured plaintiffs, who are judicially un-accommodated will entertain!" (Compl. at 20.)

- "This civil action . . . is historically about the handling of the Beatrice Stready Estate as directed by the late Beatrice Stready . . . ."  (Pls.' Reply Memo. [32] at 2.)

- "As a result of this case Gwinnett County Probate Court has to realize that the Court has harbored a fraud in the re-processing of the Beatrice Stready Estate!"  (Pls.' Mot. for Leave [67] at 6.)

- "The defendants are at a disadvantage with procedure because the defendants are trying to defend against well exposed, and established fraud on the record of the Gwinnett County Probate Court.  Besides at no time through-out this case has any defendant come forward to refute the interpretation of the Will as proclaimed by the plaintiffs!" (Pls.' Mot. for Leave [67] at 6.)

- "In other words, this above-styled, entitled-action is partially predicated on the Probate Court because the conspiracy along with all other allegations, and counts that describe/support plaintiffs' civil action are consummated and confirmed in the Gwinnett County Probate Court . . . ."  (Pls.' Statement in Opp'n to Def. Clarke's Statement of Undisputed Material Facts [40] at 2.)

- "Plaintiffs find the defendants, and the defendants' pre-judicial, judicial, and post-judicial processes from the Probate Court of Gwinnett County, Georgia as related to, and quoted from the Pullman Abstention Doctrine, as 'still constitutionally suspect' between the first processing dated April 10, 1979; and second processing ending with the Issuance of the Final Order dated July 22, 2005 from the Probate Court of Gwinnett County, Georgia."  (Pls.' Memo. of Law in Opp'n to Def. Harrison's Mot. to Dismiss [58] at 2.)

Having reviewed the allegations of Plaintiffs' Complaint, and their arguments presented in other filings, the Court finds Plaintiffs' claims succeed only to the extent the probate court wrongly decided the issues before it and that the remaining criteria for the application of the *Rooker-Feldman* doctrine have been satisfied. Accordingly, this Court's exercise of jurisdiction over these claims is barred.

B.    <u>Other Grounds for Dismissal</u>

Even if the Court had jurisdiction over Plaintiffs' claims, dismissal still would be warranted.  Plaintiffs state "Title II of the Civil Rights Act of 1964 sections 201(a), (d), 202, 203(a) is the predominate violation and all other counts and allegations are used to describe/support."  (Compl. at 10.)  Plaintiffs appear to raise claims for conspiracy to commit civil rights violations and denial of due process and equal protection of law arising from the administration of the decedent's estate

and the associated probate court proceedings.  Plaintiffs also reference violations of the First, Sixth and Thirteenth Amendments, as well as violations of 42 U.S.C. §§ 1983, 1985 and 1986 and 18 U.S.C. § 2381.[9]

      1.     *Defendant Walter J. Clarke*

Judge Clarke presided over the Probate Court of Gwinnett County proceedings which form the basis of Plaintiffs' claims in this action.  Plaintiffs' claims against Judge Clarke essentially are that Judge Clarke denied them due process and equal protection during the proceedings before him.

It is well settled that judges are absolutely immune from liability for damages for their judicial acts.  <u>Mireles v. Waco</u>, 502 U.S. 9, 9 (1991).  A plaintiff may overcome a defendant's judicial immunity only under two circumstances:  "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. . . .  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  <u>Id.</u> at 11-12.  Whether an act is judicial shall be determined by "'the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the

_____

   [9] For reasons discussed *infra*, the Court does not address Plaintiffs' state-law claims.

expectations of the parties.'" Id. at 12 (quoting Stump v. Sparkman, 435 U.S. 349 (1978)).  An action is taken in the complete absence of jurisdiction where the judicial officer lacked subject matter jurisdiction over the proceedings.  Dykes v. Hosemann, 776 F.2d 942, 947-48 (11th Cir. 1985).  "Judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."  Mireles, 502 U.S. at 11.

Here, Plaintiffs' claims against Judge Clarke stem from his judicial decisions while he presided over the probate court proceedings.  Plaintiffs allege: "[Defendants] willingly created in concert a deceptive and flagrant judicial proceedings, and handlings of Beatrice Stready Estate while acting under color of statu[t]e, ordinance, regulation, custom, tradition, and laws of which has deprived, and are still confiscating Plaintiffs' substantive, and procedural due process rights, equal protection of the laws, or equal privileges . . . ."  (Compl. at 4.)  Plaintiffs do not allege, and nothing in the record suggests, that Judge Clarke acted outside his judicial capacity or that he was without jurisdiction over the proceedings.  The

Court finds Judge Clarke is entitled to judicial immunity[10] with respect to Plaintiffs'

claims and these claims therefore should be dismissed.

> 2.    *Defendants G. Hughel Harrison, William F.C. Skinner, Jr.*
>        *and Luke Stready, Jr.*

The Court collectively will address the federal-law claims asserted by

Plaintiffs against Defendants Harrison, Skinner and Stready.

> a.    <u>Title II of the Civil Rights Act of 1964</u>

Plaintiffs state "Title II of the Civil Rights Act of 1964 sections 201(a), (d),

202, 203(a) is the predominate violation and all other counts and allegations are

used to describe/support."  (Compl. at 10.)  Title II provides that "[a]ll persons

shall be entitled to the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, and accommodations of any place of public

accommodation, as defined in this section, without discrimination or segregation on

the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a.  To

establish a claim under § 2000a, a plaintiff must demonstrate that the plaintiff (1) is

_____

[10]  A number of the controlling cases addressing judicial immunity dealt with alleged violations of the constitutional rights of *pro se* litigants.  <u>See, e.g.</u>, <u>Smith v. Shook</u>, 237 F.3d 1322 (11th Cir. 2001); <u>Bolin v. Story</u>, 225 F.3d 1234 (11th Cir. 2000); <u>Bryan v. Murphy</u>, 246 F. Supp. 2d 1256 (N.D. Ga. 2003).

a member of a protected class, (2) attempted to contract for services and afford herself the full benefits and enjoyment of a public accommodation, (3) was denied the full benefits or enjoyment of a public accommodation, and (4) such services were available to similarly situated persons outside her protected class who received full benefits or were treated better.  Benton v. Cousins Props., Inc., 230 F. Supp. 2d 1351, 1382 (N.D. Ga. 2002) (citation omitted).

Plaintiffs have not alleged the basic elements of a Title II claim.  Plaintiffs have not alleged that the Probate Court of Gwinnett County is a place of public accommodation for purposes of Title II, and the Court has not discovered legal authority indicating that it is.  See 42 U.S.C. § 2000a(b).  Even if it was a place of public accommodation, there is no authority to impose liability on Defendants Harrison, Skinner and Stready -- two of whom are attorneys and the other the executor of the estate -- for an alleged denial of access to the probate court.  Plaintiffs also have not alleged any basis for their conclusion that the alleged denial of benefits or enjoyment was on account of race, or that similarly situated individuals received better treatment.  Plaintiffs simply have not alleged a violation of Title II.

Finally, Plaintiffs' claim under Title II also fails because Title II provides only for injunctive relief.  See Brooks v. Collis Foods, Inc., 365 F. Supp. 2d 1342, 1351 (N.D. Ga. 2005) (citing Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 401-02 (1968)).  "In order to claim injunctive relief, a plaintiff must show real or immediate threat that the plaintiff will be wronged again -- a likelihood of substantial and immediate irreparable injury."  Id.  Because Plaintiffs do not request injunctive relief, or that it is, as a practical matter even available considering the land at issue already has been sold, and in that there is no indication that they face a real or immediate threat that they will be wronged again, Defendants are entitled to judgment as a matter of law on Plaintiffs' Title II claims.

b.    Denial of Due Process and Equal Protection

Procedural due process requires the opportunity to be heard -- this requires notice and an opportunity to be heard.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  The Probate Court of Gwinnett County records demonstrate that Plaintiff Stanley received and signed an "Acknowledgment of Service and Consent to Petition," had both notice and an opportunity to object,

-17-

and participated in the probate court proceedings.[11]  (See Exs. 2, 4 to Def. Clarke's

Answer [9].)  Accordingly, Plaintiffs have not stated a claim for denial of due

process rights.[12]

Plaintiffs also claim their right to equal protection was violated.  "[T]o

properly plead an equal protection claim, a plaintiff need only allege that through

state action, similarly situated persons have been treated disparately."  Thigpen v.

Bibb County, Ga., Sheriff's Dep't, 223 F.3d 1231, 1237 (11th Cir. 2000).  Here,

Plaintiffs fail to allege they were (i) treated differently from similarly situated

persons, or (ii) this treatment was the result of state action.  Accordingly, Plaintiffs

fail to state a valid claim for violation of equal protection rights.

---

[11]  The conclusory affidavits submitted by Plaintiffs do not contradict this
finding.  (See Affidavits, attached as Exs. to Pl.'s Mot. for Summ. J. [15].)

[12]  To the extent Plaintiffs raise a claim for denial of substantive due process
rights, Plaintiffs' allegations fail to state a viable claim.  See Montford v. Moreno,
2005 WL 1369563, *7 (11th Cir. June 9, 2005) ("For the most part, substantive due
process has been confined to issues relating to marriage, family, procreation, and
the right to bodily integrity.").

        c.     <u>First, Sixth and Thirteenth Amendment Claims</u>

The basis for Plaintiffs' claim for violation of rights under the First Amendment appears to be:  "[P]laintiffs['] rights to worship are also affected/effected by the ability for plaintiffs to 'tithe' unto Yahweh as pertaining to the scriptures.  Plaintiffs['] ability to help others in need are/were impacted also as a result of the abominable acts, actions, and/or in-actions of the defendants in relation to plaintiffs.  Yahweh commands plaintiffs to serve Yahweh everyday . . . ."  (Pls.' Memo. of Law in Opp'n to Def. Harrison's Mot. for Summ. J. [56] at 11.) Plaintiffs also allege:  "[T]he only time Attorney Harrison has been willing to see plaintiffs was on the Sabbath Day."  (Compl. at 10.)  These allegations are not sufficient to state a claim for violation of First Amendment rights.

Similarly, the Sixth and Thirteenth Amendments -- relating to criminal prosecutions and slavery, respectively -- have no bearing on this case.

d.    Violations of Sections 1983, 1985 and 1986[13]

Section 1983 provides a cause of action for persons who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law.  42 U.S.C. § 1983.  "A section 1983 claim is conditioned on two essential elements: first, the conduct complained of must have been committed by a person acting under color of state law; second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States."  Whitehorn v. Harrelson, 758 F.2d 1416, 1419 (11th Cir. 1985). Plaintiffs cannot establish either of the necessary elements to state a Section 1983 claim.  First, as discussed *supra*, there is no evidence or allegation that Plaintiffs have been deprived of federal rights.  Second, the Court has not found legal authority to support the proposition that Defendants Harrison, Skinner or Stready

---

[13]  Plaintiffs also assert a claim against Defendants under 18 U.S.C. § 2381, (see Compl. at 5), which has no application to these proceedings.  See 18 U.S.C. § 2381 ("Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason . . . .").

was acting under color of state law for the purpose of imposing liability under Section 1983.

To establish a claim under Section 1985, a plaintiff must show:  "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  Burrell v. Board of Trustees of Ga. Military College, 970 F.2d 785, 793-94 (11th Cir. 1992); 42 U.S.C. § 1985.  In this case, Plaintiffs have not alleged any specific conspiracy amongst Defendants to deprive Plaintiffs of their constitutional rights.  Having reviewed Plaintiffs' Complaint and arguments presented in their briefs, the Court finds Plaintiffs' allegations are conclusory, vague and subject to dismissal.  See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required.  In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.").

-21-

"Moreover, § 1986 provides a cause of action against anyone who has knowledge that any of the wrongs conspired to be done, and mentioned in § 1985 are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses to do so."  See Armstrong v. Friduss, 138 Fed. Appx. 189, 193-94 (11th Cir. 2005) (quotation omitted); 42 U.S.C. § 1986.  Because Plaintiffs fail to state a claim under Section 1985, their claim under Section 1986 fails as a matter of law.  See id. ("We also concluded the district court properly dismissed the plaintiff's § 1986 claims because they were derivative of his § 1985 claims.").

The Court has addressed only those claims asserted by Plaintiffs under federal law and found them to be subject to dismissal.  To the extent Plaintiffs assert claims under state law, these claims do not by themselves confer original jurisdiction.[14]

"A district court may decline to exercise supplemental jurisdiction over a [state law] claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c).  "The decision on [whether to

---

[14]  Plaintiffs allege that Plaintiffs and Defendants are all citizens of the state of Georgia.  (See Compl. at 3.)

retain jurisdiction over the state-law claims] should be and is vested in the sound discretion of the district court." Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002). See generally United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Considering the nature of Plaintiffs' state-law claims, and the stage of the proceedings at which Plaintiffs' federal-law claims have been dismissed, the Court finds the relevant factors counsel against retaining supplemental jurisdiction over Plaintiffs' state-law claims. Accordingly, Plaintiffs' state-law claims should be dismissed without prejudice.

C.    Miscellaneous Motions

1.    *Plaintiffs' Motion to Amend*

On November 30, 2005, Plaintiffs filed a Motion to Amend [54]. Plaintiffs seek to add claims for "42 USC section 1981 leading a 42 USC section 1983 action on the possibility of a private actor," and "reserve[] the right to amend to ADA violations later or in another civil action with the Statute of Frauds." (Pls.' Mot. to Amend at 1-2.)

The decision whether to grant leave to amend rests in the sound discretion of the trial court.  Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262 (11th Cir. 2004).  Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading has been served, a party may amend only by leave of court or by written consent of the adverse party, and "leave shall be freely given when justice so requires."  "[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."  Hall, 367 F.3d at 1263.

Plaintiffs do not provide any legal authority, nor has the Court been able to find any, to suggest the claims Plaintiffs seek to add are viable under the set of facts alleged.  The Court, therefore, finds that the amendment Plaintiffs seek to make would be futile.  Having reviewed the course of this litigation, and also having evaluated the merits of the claims already asserted against Defendants, the Court further finds the interests of justice weigh in favor of denying the motion to amend in this action.  Accordingly, Plaintiffs' Motion to Amend is denied.  See Hall, 367 F.3d at 1263 (finding "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal").

2.     *Plaintiff's Motion to Object to Counsel's Behavior*

Plaintiffs complain about Defendants' counsels' conduct in this litigation. The Court construes Plaintiffs' motion as a motion for Rule 11 sanctions. Having reviewed the Defendants' filings and conduct in this action, the Court finds that imposition of Rule 11 sanctions is not warranted. <u>See generally</u> Fed. R. Civ. P. 11 ("By presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for extension, modification, or reversal of existing law or the establishment of a new law . . . .").

3.      *Plaintiffs' Motions for Miscellaneous Relief[15]*

The Court has reviewed these motions in their entirety and has taken notice of the clarifications requested by Plaintiffs in their motions.  To the extent Plaintiffs request further relief, the Court finds the relief sought to be vague and otherwise finds insufficient grounds for an award of relief.  Accordingly, Plaintiffs' motions are denied.

4.      *Plaintiffs' Motion for Leave to Amend and to Petition the Court for a Preliminary Injunction*

On July 13, 2006, Plaintiffs filed their Motion for Leave to Amend and to Petition the Court for a Preliminary Injunction [68].[16]  Plaintiffs seek, *inter alia*, the Court (i) to enjoin the Gwinnett County Tax Commissioner from continuing to assess "current and delinquent taxes but refrain from enforcing a lien in order to confiscate, or sell property of the heirs of the Beatrice Stready Estate pending

---

[15]  These motions are entitled Plaintiffs' Motion for Court Order for Leave to Litigate Proper Articulations for Corrections and Plaintiffs' Motion for Leave to Give Notice and Motion for Court Order to Show Cause and/or Execute Plaintiffs' Motion for FRCP 56(a) Pursuant to Confirmation of FRCP 12(c) of the Defendants' Responses as Reflected by Plaintiffs' Intent for Litigation.

[16]  Plaintiffs also filed a Motion to Hear and to Consider Plaintiffs' Motion [69].  Having reviewed the parties' submissions, the Court finds a hearing is not necessary.

outcome of this litigation . . . ," (ii) to enjoin Defendants "against any other clandestine and/or known actions . . . as are necessary for proper adjudication of this above aforementioned action," (iii) to enjoin all parties from allowing the sale of the remaining property in the estate, and (iv) to order that "Defendants shall permit representatives from the Justice Dept. to interview any person . . . relating in any way to any misconduct" in this case.  (Pls.' Mot. for Leave to Amend & for Prelim. Inj. at 2-4.)[17]

Plaintiffs seek the Court to grant Plaintiffs' motion for preliminary injunction "while this case is still Ordered 'Stayed.'"  (Pls.' Memo. in Support of Pls.' Mot. for Leave to Amend & for Prelim. Inj. at 6.)  In light of the Court's determination that Plaintiffs' claims are subject to dismissal, Plaintiffs' motion is denied as moot. The Court further finds, on the merits of the motion, that Plaintiffs have not satisfied any of the requisites for the issuance of injunctive relief.  See Fed. R. Civ. P. 65.

---

[17]  Although styled as a motion to amend and for a preliminary injunction, the only relief sought by Plaintiffs is the issuance of a preliminary injunction.

III.    **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' claims are **DISMISSED** for lack of jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend [54], Plaintiff's Motion to Object to Counsel's Behavior [36], Plaintiffs' Motions [66, 67] and Plaintiffs' Motion to Hear and to Consider Plaintiffs' Motion [69] are **DENIED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED AS MOOT**.

**SO ORDERED** this 18th day of July, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE